Law Offices of Jan Meyer & Associates, P.C.
Noah Gradofsky – ID/ngradofsky
1029 Teaneck Road, Second Floor
Teaneck, New Jersey 07666
Tel: 201 862-9500 x 209b
ngradofsky@janmeyerlaw.com

---

**IN THE UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY**

---

| | |
|---|---|
| FIDELITY AND GUARANTY INSURANCE UNDERWRITERS, INC. as subrogee of Damjan Stanivukovic | |
| Plaintiff, | Case No.: |
| v. | |
| MIELE, INC., | |
| Defendant. | |

## COMPLAINT

NOW COMES, through undersigned counsel, Plaintiff, Fidelity and Guaranty Insurance Underwriters, Inc., as subrogee of Damjan Stanivukovic, and for its Complaint against the Defendant states as follows:

### PARTIES

1. Plaintiff, Fidelity and Guaranty Insurance Underwriters, Inc., ("Fidelity"), is a Wisconsin corporation with its principal place of with its principal place of business located in Connecticut. At all times relevant, Plaintiff Fidelity insured the property at which the water damage made the basis of this lawsuit occurred (the "Policy"). The property at issue was owned

Damjan Stanivukovic and was located at 86 Knickerbocker Rd., Closter, NJ 07624 (the "Subject Property").

2. Plaintiff Fidelity paid monies to and on behalf of Damjan Stanivukovic as a result of the damages complained of herein and is pursuing this action as a bona fide subrogee of Damjan Stanivukovic. Fidelity is equitably and contractually subrogated to the full rights, claims, and benefits of Damjan Stanivukovic against the Defendant.

1. Damjan Stanivukovic (the "Insured") is a New Jersey resident who owned a property located at 86 Knickerbocker Rd., Closter, NJ 07624. Prior to the water damage incident made the basis of this lawsuit, the Insured purchased Traveler's homeowner's policy of insurance, which policy was in force and effect at the time of the product failure and damage at issue in this lawsuit.

2. Defendant Miele, Inc. ("Miele USA") is a corporation organized under Delaware law and with its principal place of business located at 9 Independence Way, Princeton, New Jersey 08540. Miele USA does substantial and continuous business in the State of New Jersey.

3. Upon information and belief, Miele is a wholly owned subsidiary and alter ego of Miele & Cie. KG ("Miele KG"), a German company.

4. Miele KG controls the day to day functions of Miele USA, Miele USA is financially dependent on Miele KG, and Miele USA sells products exclusively under brands owned by Miele KG.

5. Upon information and belief, Miele USA marketed, distributed, and sold the dishwasher at issue in this lawsuit in New Jersey, and it participated substantially in the design of the dishwasher at issue in this lawsuit.

**JURISDICTION AND VENUE**

6. The Court has specific jurisdiction over Miele USA because the product at issue in this product liability lawsuit was sold to the Insured in New Jersey, and Miele USA has substantial contacts with the State of New Jersey.

7. The Court has general personal jurisdiction over Miele USA because the company's principal place of business is located in this district.

8. A substantial portion of the events giving rise to this lawsuit occurred in this District.

9. This Court has subject matter jurisdiction pursuant to 28 U.S.C § 1332(a) as the Plaintiff is domiciled in a different state than the Defendant and the amount in controversy is in excess of $75,000, exclusive of interest and costs.

10. The Court also has federal questions jurisdiction over the Magnuson-Moss Warranty Act claim and, as a result, has pendent jurisdiction over the remainder of the claims.

11. Venue is proper in this judicial district pursuant to 28 U.S.C §1391(b) as the Defendant does substantial business in this judicial district, including selling the product at issue.

**FACTUAL ALLEGATIONS**

12. The Insured purchased and owned a Miele brand dishwasher at their New Jersey home, bearing serial number 61/95410146, model number PG8083 type GG07 (the "Dishwasher").

13. On or about July 5, 2019, the Dishwasher failed and, as a result, water flooded the Insured' home located at 86 Knickerbocker Rd., Closter, New Jersey 07624 (the "Insured Home").

14. As a result of the failure of the Dishwasher and associated flooding, the Home and the Insured' personal property sustained significant damages in excess of $400,000. The Insured also lost the use of his home for a period of time as damage to the home was remediated.

15. Pursuant to the terms of the insurance policy issued to the Insured, Fidelity paid hundreds of thousands of dollars to and on behalf of the Insured as a result of the Dishwasher failure and associated damage.

## COUNT I – VIOLATIONS OF NJPLA

16. Plaintiff hereby incorporates the allegations contained in the preceding and following paragraphs as though fully set forth herein at length.

17. The Defendant owed a duty to the Insureds and the general public to source, test, inspect, market, distribute and sell dishwashers with reasonable care, and Defendant had a duty to protect the Insured from foreseeable and unreasonable risk of harm.

18. Under the New Jersey Product Liability Act, the Defendant was required to manufacture, design, market, distribute and brand dishwashers that were reasonably fit, suitable, or safe for their intended purpose.

19. The Defendant violated the New Jersey Product Liability Act by designing, manufacturing, branding, marketing and selling the Dishwasher, which was not reasonably fit and not suitable or safe for its intended purpose because it was designed in a defective manner such that it could fail and cause extensive flooding throughout a home, it was manufactured in a way that failed to adhere to the design specifications through the use of inferior component parts, and which also failed to warn consumers adequately to the associated risks of using the product.

20. Defendant knew or should have known that the dishwashers they designed, manufactured, and sold, including the specific product at issue in this case, in ordinary and foreseeable use, created unreasonable safety risks and would fail to perform as intended, resulting in

floods and related property damage, because they were designed and built with inferior parts and were otherwise defective in design, manufacture, and with respect to warnings.

21. Defendant knew or should have known that its dishwashers, including the Dishwasher, created dangerous and unreasonable safety risks as that could cause catastrophic property damage, personal injury and/or death.

22. Defendant had a further duty not to put defective dishwashers on the market, and a continued duty to recall unsafe dishwashers from customers, as well as a duty to replace or otherwise remove unsafe dishwashers from the market.

23. Defendant failed to exercise reasonable care with respect to the sourcing, testing, inspection, marketing, branding, distribution and sale of dishwashers, including the Dishwasher at issue in this case.

24. The Dishwasher at issue was unreasonably dangerous at the time it left the possession and control of the Defendant because:

    a.    The Dishwasher was built with component parts prone to failure when used in a reasonably foreseeable manner.

    b.    The supply line included with the Dishwasher lacks any elements to help prevent the rubber hose from failing if the braided stainless steel corrodes, though Miele knows with certainty the braided stainless steel will corrode under normal use conditions.

    c.    The shut off valve for the Dishwasher is poorly located such that water losses and failures are more likely.

    d.    The manual fails to apprise users properly of the risks of foreseeable uses of the Dishwasher and is otherwise defective.

    e.    The stainless steel was of inferior quality.

  f. The Dishwasher is otherwise defective in design and with respect to warnings.

25. As a direct and proximate result of one or more of the aforementioned conditions, the Dishwasher was a defective and unreasonably dangerous product.

26. The foreseeable risks of harm posed by the Dishwasher could have been avoided by the adoption of a reasonable alternative, including but not limited to the use of non-corrosive materials in supply lines, the proper location of valves near the beginning of lines as opposed to under the Dishwasher, the existence of an outer layer to protect the line in the event that the braided stainless steel failed, among other alternative designs.

27. The foreseeable risks of harm could have been prevented or reduced by the provision of reasonable instructions and warnings by Miele which were not provided.

28. Miele USA placed the Dishwasher on the market knowing that it is to be used without inspection for defects, and it proved to have a defect that caused damage to the Insured Home.

29. Miele USA was an integral part of the overall producing and marketing enterprise for the Dishwasher.

30. Miele USA received direct financial benefit from its activities and the sale of the Dishwasher, and it exercised influence over the design and manufacturing process for Miele products sold in the United Sates.

31. The Dishwasher did not perform as safely as an ordinary consumer would have expected it to performed when used or misused in an intended or reasonably foreseeable way.

32. The Dishwasher's failure to perform safely was a substantial factor in causing Traveler's harm.

33. The Dishwasher was used in an intended or foreseeable manner.

34. The benefits of the design of the Dishwasher do not outweigh the risk of danger inherent in the design.

35. As a direct and proximate result of the Defendant's violations of the NJPLA, and its negligent acts and omissions set forth above, the Dishwasher was defective and caused substantial damage at the Subject Property and to the Insured, to which Plaintiff is contractually and equitably subrogated.

36. As a direct and proximate result of Defendant's conduct and the defects with the Subject Dehumidifier, Plaintiff suffered losses and damages including destruction of property, debris removal, remediation expenses, emergency expenses and other incidental costs associated with recovering from the water flood event in excess of $400,000.

37. Pursuant to the provisions of the policy of insurance issued to the Insured by Fidelity, Fidelity paid to or on behalf of its Insured in excess of $400,000 to repair or replace damaged or destroyed property and otherwise compensate the Insured for losses sustained as a result of the Dishwasher failing and leaking water.

38. By virtue of the payments Fidelity made, the terms of the policy it issued to the Insured, and by virtue of equity, Fidelity has become and is subrogated to all rights, remedies, and causes of action accruing to the Insured and against the Defendant.

Wherefore, Plaintiff Fidelity, as subrogee of the Insured, request that judgment be entered in its favor and against the Defendant, on Count I, in an amount in excess of $400,000, together with costs, interest, and any other relief the Court deems equitable and just or to which Fidelity is entitled under the law.

**COUNT II – VIOLATIONS OF THE MAGNUSON MOSS WARRANTY ACT –**

## 15 U.S.C. §2301 ET. SEQ.

39. Plaintiff incorporates by reference each preceding and succeeding paragraph and though fully set forth at length herein.

40. Plaintiff stands in the shoes of its Insured, who are "consumers" within the meaning of the Magnuson-Moss Warranty Act, 15 U.S.C. §2301(3).

41. Defendant is a supplier and warrantor within the meaning of 15 U.S.C. §§ 2301(4)-(5).

42. The Dishwasher is a "consumer product" as defined by 15 U.S.C. §2301(1).

43. Defendant was at all times a manufacturer, warrantor, and seller of the defective dishwashers at issue, including the Dishwasher.

44. Defendants provided Plaintiff's Insured with an implied warranty that the Dishwasher and any parts thereof are merchantable and fit for the ordinary purposes for which they were sold. However, the Dishwasher is not fit for its ordinary purpose of safely and effectively washing dishes because of the defects detailed above.

45. Defendant impliedly warranted that the Dishwasher was of merchantable quality and fit for such use in cleaning dishes without exposing one's home to continual flooding until the water was turned off.

46. Defendant's warranties were designed and intended for the benefit of the Insured as the consumers of the Dishwasher.

47. Contrary to the applicable implied warranties, the Dishwasher at the time of sale and thereafter was not fit for its ordinary and intended purpose but, instead, suffered from design and warning defects that rendered it at increased and unacceptably high risk of failure.

48. Defendant's breach of the implied warranties has deprived Plaintiff, as subrogee of the Insured, of the benefit of their bargain.

49. The amount in controversy meets or exceeds the sum or value of $400,000 exclusive of interests and costs.

50. Plaintiff afforded the Defendant notice and a reasonable opportunity to cure its breach via letter, multiple times, and the Plaintiff was not required to do so because affording Defendant a reasonable opportunity to cure would have been futile. Defendant was further on notice of the defects with its dishwashers as Defendant's representatives made statements acknowledging the problems with Miele dishwasher supply lines.

51. As a direct and proximate result of Defendant's breach of their implied warranties, the Insured and Plaintiff sufferance property damage, including the loss of use thereof, and sustained other damages for which Defendant is liable, together with statutory attorney's fees and such other relief which the Court deems to be just and appropriate.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff seeks the following judgment:

    a.    Payment to Plaintiff of reimbursement for all damages resulting from the flooding incident made the basis of this lawsuit;

    b.    An award of attorneys' fees and costs, as provided by law;

    c.    Interest as provided by law, including but not limited to pre-judgment and post-judgment interest as provided by rule or statute; and

    d.    All such other and further relief to which the Plaintiff is entitled in law or equity and as the Court may deem just, equitable, or proper.

Dated: April 20, 2023

                                  LAW OFFICES OF JAN MEYER & ASSOCIATES, P.C.

                                  *s/Noah Gradofsky*_____

                                  By: Noah Gradofsky